An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA15-113

Filed: 6 October 2015

Ashe County, No. 13 JT 2

IN THE MATTER OF: E.L.E.

Appeal by respondent-mother from order entered 6 November 2014 by Judge David Byrd in Ashe County District Court. Heard in the Court of Appeals 8 September 2015.

> *Randolph and Fischer, by J. Clark Fischer, for petitioner-appellee custodians.*
>
> *Assistant Appellate Defender Joyce L. Terres for respondent-appellant mother.*
>
> *No brief filed for guardian ad litem.*

BRYANT, Judge.

Where the trial court failed to make necessary findings of fact to support its conclusions of law that grounds exist to terminate respondent's parental rights, we reverse.

In February 2010, shortly after Emma's[1] birth, the Ashe County Department of Social Services ("DSS") received a report of domestic violence and substance abuse in her home. DSS arranged for Emma to be placed with her maternal great aunt and uncle ("petitioners") though a kinship agreement. Respondent entered into an in-home services agreement with DSS, but on 3 August 2010 she was arrested for shoplifting, concealing goods, and possession of a controlled substance.

On 5 August 2010, DSS filed a petition alleging Emma was a neglected juvenile because she lived in an environment injurious to her welfare and did not receive proper care, supervision, or discipline. In the petition, DSS reiterated the domestic violence and substance abuse claims that were first reported in February 2010, and asserted that respondent had failed to move forward with the Family Service Case Plan she entered into in March of 2010. Additionally, DSS alleged that respondent had been arrested for shoplifting as she left a pediatrician's office after an appointment for Emma. DSS took nonsecure custody of Emma, but continued placement of her with petitioners.

After a hearing on 27 October 2010, the trial court entered an order adjudicating Emma to be a neglected juvenile. The court continued custody of Emma with DSS and sanctioned her placement with petitioners. The court directed

---

[1] A pseudonym has been used to protect the identity of the minor child pursuant to N.C. R. App. P. 3.1 (2013).

respondent to comply with her plan of treatment and awarded her supervised visitation with Emma for at least two hours per week.

In an order from a review hearing held 23 February 2011, the trial court continued custody of Emma with DSS and continued to sanction placement with petitioners. However, the court found that respondent, while not perfect, "had done well in therapy and drug screen[s,]" and granted her two hours of weekly unsupervised visitation with Emma. The court conditioned respondent's unsupervised visitation upon her continued compliance with her case plan and the requirements of the Family Solutions House, where she was residing and receiving mental health and substance abuse treatment and therapy.

The trial court held a combined review and permanency planning on 27 April 2011. The court set the permanent plan for Emma as reunification with a parent, continued custody of Emma with DSS and placement with petitioners, and increased respondent's visitation to include one overnight visitation each week. The court stated that it was impressed that respondent had not missed any counseling sessions or classes since her entry into the Family Solutions House, but admonished her for committing "childish" violations of the house rules.

A second combined review and permanency planning hearing was held by the trial court on 30 September 2011. In its order from that hearing, the court found respondent mother was no longer living at the Family Solutions house because she

was "kicked out" the previous June for continued violations of the house rules. The court further found that respondent missed several drug tests in July and August 2011, had a recent conviction for driving while impaired, had a sporadic work history consisting of short-duration jobs, and had married in July 2011. Respondent's new husband was a recovering alcoholic and had entered into a Family Service Case Plan with DSS that required him to obtain substance abuse treatment. The court incorporated by reference GAL court summaries, particularly the portion of the GAL summary recording respondent's poor reunification efforts. The court found that although respondent had made some recent progress on her case plan, she had not shown consistent and lasting progress toward correcting the conditions that led to the removal of Emma from her care.

Based on respondent's lack of progress, the court concluded that reasonable efforts toward reunification were futile and relieved DSS of any further responsibility to work with respondent towards reunification. Nevertheless, the court found that respondent had a close bond with Emma and that it would not be in Emma's best interests to terminate respondent's parental rights. The court awarded full legal and physical custody of Emma to petitioners and established a visitation schedule for respondent. At the next review and permanency planning hearing, the trial court relieved Emma's guardian ad litem of further involvement in the juvenile case, continued legal and physical custody with petitioners, continued visitation with

respondent, and converted the juvenile case to a Chapter 50 civil action by order entered 23 June 2012.

On 28 January 2013, petitioners filed a petition to terminate respondent's parental rights to Emma. Petitioners alleged grounds existed to terminate respondent's parental rights based on neglect, failure to make reasonable progress to correct the conditions that led to Emma's removal from her care and custody, failure to pay a reasonable portion of the cost of Emma's care, dependency, and abandonment. *See* N.C. Gen. Stat. § 7B-1111(a)(1)–(3), (6)–(7) (2013). Petitioners filed a motion to appoint a guardian ad litem ("GAL") for Emma, and by order entered 27 February 2013, the trial court reappointed the GAL who had previously represented Emma in the juvenile case. Petitioners also obtained civil court orders ceasing respondent's visitation with Emma.

After a three-day hearing, the trial court entered an order terminating respondent's parental rights on 6 November 2014. The trial court terminated respondent's parental rights on the grounds of neglect, failure to make reasonable progress to correct the conditions that led to Emma's removal from her care and custody, and failure to pay a reasonable portion of the cost of Emma's care. Respondent appeals.

_____

On appeal, respondent-mother contends the trial court erred by failing to appoint an attorney advocate. Respondent further argues that the trial court erred in terminating her parental rights because the trial court's findings of fact and conclusions of law were inaccurate.

We first address respondent's arguments that the trial court erred in concluding that grounds exist to terminate her parental rights. At the adjudication stage of a termination of parental rights proceeding, the trial court "examines the evidence and determines whether sufficient grounds exist under N.C. Gen. Stat. § 7B-1111 to warrant termination of parental rights." *In re T.D.P.*, 164 N.C. App. 287, 288, 595 S.E.2d 735, 736 (2004), *aff'd per curiam*, 359 N.C. 405, 610 S.E.2d 199 (2005).

We review the trial court's adjudication to determine if its "findings of fact are supported by clear, cogent and convincing evidence and whether these findings, in turn, support the conclusions of law." *In re Clark*, 72 N.C. App. 118, 124, 323 S.E.2d 754, 758 (1984). "Findings of fact supported by competent evidence are binding on appeal even if evidence has been presented contradicting those findings." *In re L.H.*, 210 N.C. App. 355, 362, 708 S.E.2d 191, 196 (2011). Similarly, the trial court's findings of fact that are not challenged by the appellant are binding on appeal. *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991). However, "[t]he trial court's conclusions of law are reviewable *de novo* on appeal." *In re J.S.L.*, 177

N.C. App. 151, 154, 628 S.E.2d 387, 389 (2006) (citations and internal quotation marks omitted).

We first address the trial court's conclusion that grounds exist to terminate respondent's parental rights because she willfully failed to pay a reasonable portion of the cost of care for Emma. This conclusion is based on N.C. Gen. Stat. § 7B-1111(a)(3), which permits termination of parental rights where:

> The juvenile has been placed in the custody of a county department of social services, a licensed child-placing agency, a child-caring institution, or a foster home, and the parent, for a continuous period of six months next preceding the filing of the petition or motion, has willfully failed for such period to pay a reasonable portion of the cost of care for the juvenile although physically and financially able to do so.

N.C. Gen. Stat. § 7B-1111(a)(3) (2013). Here, Emma was not placed in the custody of a county department of social services, a licensed child-placing agency, a child-caring institution, and this ground may only apply if petitioners' home qualifies as a foster home. A foster home in North Carolina is defined as a:

> [P]rivate residence of one or more individuals who permanently reside as members of the household and who provide continuing full-time foster care for a child or children who are placed there by a child placing agency or who provide continuing full-time foster care for two or more children who are unrelated to the adult members of the household by blood, marriage, guardianship or adoption.

N.C. Gen. Stat. § 131D-10.2(8) (2013). Thus, there are two means by which petitioners' home may qualify as a foster home: (1) they are providing full-time foster

care for a child placed there by a child placing agency; or (2) they are providing full-time foster care for two or more children who are unrelated to them. Petitioners meet neither of these criteria. Emma was not placed with petitioners by a child placing agency because petitioners are Emma's lawful custodians pursuant to a court order entered 23 June 2012. Petitioners are also Emma's maternal great aunt and uncle and thus related to her by blood. Accordingly, petitioners' home does not qualify as a foster home and the trial court erred in concluding that respondent's parental rights could be terminated for her failure to pay a reasonable portion of Emma's cost of care under N.C.G.S. § 7B-1111(a)(3).

The trial court also concluded that grounds exist to terminate respondent's parental rights because she had "willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances ha[d] been made in correcting those conditions which led to the removal of the juvenile." N.C.G.S. § 7B-1111(a)(2) (2013).

To terminate parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(2), the trial court "shall take evidence, find the facts, and shall adjudicate the existence or nonexistence of any of the circumstances set forth in G.S. 7B-1111 which authorize the termination of parental rights of the respondent." *In re C.C.*, 173 N.C. App. 375,

618 S.E.2d 813, 819 (quoting N.C. Gen. Stat. § 7B-1109(e) (2003)).  Consequently, the

trial court must perform a two part analysis:

> The trial court must determine by clear, cogent and convincing evidence that [1] a child has been willfully left by the parent in . . . placement outside the home for over twelve months, and, [2] further, that as of the time of the hearing, as demonstrated by clear, cogent and convincing evidence, the parent has not made reasonable progress under the circumstances to correct the conditions which led to the removal of the child.

*In re O.C.*, 171 N.C. App. 457, 464, 615 S.E.2d 391, 396 (2005).

Emma had been adjudicated neglected and removed from respondent's care

and custody due to domestic violence and respondent's substance abuse.  The trial

court made no findings of fact regarding respondent's progress toward correcting her

domestic violence issues, and the evidence presented at the hearing failed to suggest

that respondent continued to be involved in any domestic violence.  On the other

hand, the court did find that respondent had "gone through various substance abuse

treatment programs and ha[d] been 'clean' for approximately 18 months."  The court

commended respondent on her progress in addressing her substance abuse issues.

Accordingly, we conclude that the trial court's findings of fact do not support its

conclusion that respondent had not made reasonable progress under the

circumstances toward correcting the conditions which led to Emma's removal from

her care.  We thus hold the trial court erred in concluding that respondent's parental

rights could be terminated based on this ground.

Lastly, the trial court concluded that grounds exist to terminate respondent's parental rights because she had neglected the juvenile. *Id.* § 7B-1111(a)(1) (2013). A neglected juvenile is defined as:

> A juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law.

N.C. Gen. Stat. § 7B-101(15) (2013). Generally, "[i]n deciding whether a child is neglected for purposes of terminating parental rights, the dispositive question is the fitness of the parent to care for the child 'at the time of the termination proceeding.'" *In re L.O.K.*, 174 N.C. App. 426, 435, 621 S.E.2d 236, 242 (2005) (quoting *In re Ballard*, 311 N.C. 708, 715, 319 S.E.2d 227, 232 (1984)). However, "[w]here, as here, a child has not been in the custody of the parent for a significant period of time prior to the termination hearing, the trial court must employ a different kind of analysis to determine whether the evidence supports a finding of neglect." *In re Shermer*, 156 N.C. App. 281, 286, 576 S.E.2d 403, 407 (2003) (citations omitted). In such cases, a trial court may terminate parental rights based upon prior neglect of the juvenile if "the trial court finds by clear and convincing evidence a probability of repetition of neglect if the juvenile were returned to her parents." *In re Reyes*, 136 N.C. App. 812, 815, 526 S.E.2d 499, 501 (2000).

Here, the trial court did not find there was a probability of repetition of neglect if Emma were returned to respondent and, thus, the ground of neglect is unsupported by necessary findings of fact. *Shermer*, 156 N.C. App. at 287–88, 576 S.E.2d at 407–08. Arguably, competent evidence in the record exists to support such a finding, however, the absence of this necessary finding requires reversal. Moreover, we note that in this case there had been no showing that Emma could be returned to respondent, as she was in petitioners' custody pursuant to a civil custody order that, unlike custody granted in a juvenile order under Chapter 7B, could only be modified upon a showing that "(1) that there has been a substantial change in circumstances affecting the welfare of the child, and (2) a change in custody is in the best interest of the child." *Evans v. Evans*, 138 N.C. App. 135, 139, 530 S.E.2d 576, 578–79 (2000) (internal citations omitted). Accordingly, we hold the trial court erred in concluding that respondent's parental rights could be terminated on the ground of neglect.

In conclusion, because the trial court erred in concluding that any ground existed to terminate respondent's parental rights, we must reverse its order. Because we are reversing the trial court's order on this basis, we need not address respondent's arguments regarding whether the court erred in failing to appoint an attorney to represent Emma at the termination hearing or in concluding that it would be in Emma's best interests to terminate respondent's parental rights.

REVERSED.

Judges McCULLOUGH and INMAN concur.

Report per Rule 30(e).