TYSON, Judge.
 

 *447
 
 Respondents appeal from an order terminating their parental rights to their minor child L.L.O. We vacate the district court's order and remand.
 

 I. Background
 

 In May 2012, L.L.O. was born at Duke University Hospital, twelve weeks premature, weighing one pound fourteen ounces. As the result of her premature birth, L.L.O. remained hospitalized for approximately six weeks. After L.L.O.'s weight increased, Respondents were allowed to
 
 *448
 
 take her home. Respondents lived in Durham at the time, but moved to Roxboro about a month later. L.L.O. continued to receive medical care in Durham.
 

 L.L.O. had an appointment at Duke Pediatrics on 4 December 2012, from where she was taken by ambulance to the hospital because she was in "respiratory distress." She was released the same day with a follow-up appointment scheduled for the next day. After L.L.O. missed that appointment, the Person County Department of Social Services ("DSS") received a report of purported medical neglect concerning L.L.O. On 6 December 2012, a DSS social worker spoke with Respondent-mother, encouraged her to reschedule the appointment for the following day, and offered to provide transportation to the appointment for Respondent-mother and L.L.O. At L.L.O.'s appointment the next day, she was determined to be in "respiratory distress." Her pulse oxygen levels were "dangerously low" and she was again transported to the hospital.
 

 When L.L.O. was discharged from the hospital on 10 December 2012, Respondent-mother was given a prescription for prednisone for L.L.O. She was instructed to fill the prescription and give L.L.O. a dose every twelve hours for the next forty-eight hours. According to Respondent-mother, she was unable to fill the prescription that day because her pharmacy was closed by the time she and L.L.O. had returned to Roxboro. On 11 December 2012, the following day, a social worker filled the prescription for Respondent-mother and delivered it to the home. Although the social worker brought the medication to Respondents' home at 4:45 p.m. that day, L.L.O. did not receive her first dose of prednisone until the following day, 12 December 2012. That same day, a social worker transported L.L.O. and Respondent-mother to a follow-up appointment, where she was again found to be in "respiratory distress."
 

 On 15 December 2012, a social worker transported L.L.O. and Respondent-mother to Duke Pediatrics. L.L.O. was again found to be in "respiratory distress" and was transported to the hospital by ambulance. Following L.L.O.'s discharge several hours later, Respondents were instructed to schedule a follow-up appointment, which Respondents did not do. Duke Pediatrics scheduled an appointment on L.L.O.'s behalf and notified Respondents of the 19 December appointment. Respondents did not appear with L.L.O. for the appointment.
 

 On 19 December 2012, DSS filed a petition alleging L.L.O. was neglected, because Respondents had failed to provide her necessary medical and remedial care. DSS obtained nonsecure custody of L.L.O. the same day. On 1 April 2013, the district court adjudicated L.L.O. to be
 
 *449
 
 neglected "as alleged in
 
 *61
 
 the Petition," and ordered Respondents to submit to drug screens, relinquish L.L.O.'s WIC vouchers to DSS and develop a case plan with DSS.
 

 Respondents agreed and entered into case plans with DSS, which included the following goals: obtain and maintain employment and housing; participate in psychological and substance abuse evaluations and follow all recommendations; refrain from using drugs and alcohol and participate in drug testing; attend visitation with L.L.O.; and communicate respectfully with DSS, foster parents, and other staff regarding L.L.O.'s care and scheduled visits.
 

 Following a 2 December 2013 permanency planning hearing, the trial court ordered that DSS could cease reunification efforts. At the next permanency planning hearing on 9 June 2014, the court ordered the permanent plan be changed from reunification to adoption.
 

 On 30 September 2014, DSS filed its motion for termination of parental rights ("TPR") alleging L.L.O. was neglected as defined in N.C. Gen. Stat. § 7B-101. Without a statutory reference, the motion also alleged that "[t]wenty-one months have passed since the child was removed from the parents' custody and little likelihood exists that the parents will ever be able to resume custody of their child."
 

 On 9 September 2015, the court entered an order limiting the time for presentation of the parties' cases to five hours total for Petitioner and the guardian ad litem and five hours total for Respondents. In its order terminating Respondent's parental rights, Judge Gentry stated he "wants the Court of Appeals to decide if he is right or wrong on that issue." Respondents do not raise this time limitation issue on appeal and it is not before us.
 

 Petitioner's motion for TPR was heard on 5 November, 6 November, and 9 November 2015. The trial court entered an order on 9 August 2016 concluding that Respondents had neglected L.L.O. and willfully left L.L.O. in foster care or placement outside of the home for more than twelve months without showing reasonable progress in correcting the conditions that led to L.L.O.'s removal. The court concluded termination was in the juvenile's best interest and terminated Respondents' parental rights. Respondents appeal.
 

 II. Jurisdiction
 

 Jurisdiction lies in this Court pursuant to N.C. Gen. Stat. § 7B-1001(a)(6) (2015).
 

 *450
 

 III. Standard of Review
 

 On appeal, our standard of review for the termination of parental rights is whether the trial court's findings of fact are based on clear, cogent and convincing evidence and whether the findings support the conclusions of law.
 

 The trial court's conclusions of law are reviewable
 
 de novo
 
 on appeal.
 

 In re J.S.L.
 
 ,
 
 177 N.C.App. 151
 
 , 154,
 
 628 S.E.2d 387
 
 , 389 (2006) (citations and internal quotation marks omitted).
 

 IV. Issues
 

 Respondents assert the trial court erred when it concluded they had neglected their daughter, L.L.O., without making any finding or conclusion of the likelihood of repetition of neglect, if L.L.O. was returned to their care. Respondents also argue the trial court erred by concluding they willfully left L.L.O. in foster care without showing reasonable progress to correct the conditions which led to her removal.
 

 V. Analysis
 

 A. Neglect
 

 A court may terminate parental rights upon a finding that the parents have neglected the juvenile within the meaning of N.C. Gen. Stat. § 7B-101(15). N.C. Gen. Stat. § 7B-1111(a)(1) (2015). In relevant part, N.C. Gen. Stat. § 7B-101(15) (2015) defines a neglected juvenile as one "who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care[.]"
 

 Where a child has not been in the custody of the parents for a significant period of time prior to the TPR hearing, "the trial court must employ a different kind of analysis
 
 *62
 
 to determine whether the evidence supports a finding of neglect."
 
 In re Pierce
 
 ,
 
 146 N.C.App. 641
 
 , 651,
 
 554 S.E.2d 25
 
 , 31 (2001),
 
 aff'd
 
 ,
 
 356 N.C. 68
 
 ,
 
 565 S.E.2d 81
 
 (2002). The court must consider "evidence of changed conditions in light of the history of neglect by the parent, and the probability of a repetition of neglect."
 

 Id.
 

 (citing
 
 In re Ballard
 
 ,
 
 311 N.C. 708
 
 , 714,
 
 319 S.E.2d 227
 
 , 231 (1984) ). The trial court concluded grounds existed for terminating the parental rights of both Respondents because both had "neglected [their] minor child, [L.L.O.]."
 
 *451
 
 The trial court's order must reflect the process by which the court reasoned and adjudicated facts, based upon clear and convincing evidence, which compel the conclusion that Respondents were likely to neglect L.L.O. if she were returned to their custody.
 
 See
 

 Appalachian Poster Adver. Co. v. Harrington
 
 ,
 
 89 N.C.App. 476
 
 , 480,
 
 366 S.E.2d 705
 
 , 707 (1988). Respondents argue the court's order lacks the requisite findings that they were likely to repeat the neglect which led to the initial adjudication, and no clear and convincing record evidence supports such finding. We agree.
 

 In
 
 In re E.L.E.
 
 , --- N.C.App. ----, ----,
 
 778 S.E.2d 445
 
 , 447 (2015), the child, Emma, had been adjudicated neglected and removed from the respondent's care due to domestic violence and respondent's substance abuse. The trial court's TPR order contained no finding that "there was a probability of repetition of neglect if Emma were returned to respondent."
 

 Id.
 

 at ----,
 
 778 S.E.2d at 450
 
 . This Court held "thus, the ground of neglect is unsupported by necessary findings of fact."
 

 Id.
 

 at ----,
 
 778 S.E.2d at 450
 
 . The court in
 
 In re E.L.E.
 
 recognized that "[a]rguably, competent evidence in the record exists to support such a finding, however, the absence of this necessary finding requires reversal."
 

 Id.
 

 at ----,
 
 778 S.E.2d at 450-51
 
 .
 

 While DSS has not filed an appellant brief, the Guardian ad Litem ("GAL") argues the following are findings supporting a conclusion of Respondent-father's neglect.
 

 48. That during the pendency of the neglect proceeding, the Respondent father failed to gain or maintain any employment or gainful activity to enable him to provide financial assistance to the child;
 

 ....
 

 50. During the course of the neglect proceeding, the Respondent father has not provided any financial support for his minor child, [L.L.O.];
 

 ....
 

 57. The father was requested to attend drug screens on seven occasions;
 

 58. On five occasions, he failed to attend the drug screens;
 

 59. On one of his drug screens he tested positive for controlled substances through hair testings, two positive
 
 *452
 
 screens through urine testing, and he had zero negative drug screens;
 

 ....
 

 64. Pursuant to such Exhibit #4, the agency also kept up with the number of visits that the parents missed, those that were rescheduled or cancelled due to DSS or other issues, and those that were removed from the parents due to their own failure to comply with visitation schedules;
 

 65. From a review of such exhibit, and considering the testimony of the DSS Social Worker and parents, the Court finds that the parents failed to visit their child on a sufficiently regular schedule in order to maintain any bond they may have originally had with their infant child;
 

 ....
 

 72. The time the father has been in jail has prevented him from bonding with his child;
 

 ....
 

 82. That [Respondents'] accommodations are not sufficient to additionally house [L.L.O.];
 

 ....
 

 95. The Court doesn't know how many times the father said he talked to his daughter. He testified I think every visit. Which that would tend to come down good for you, but there was no evidence presented about the father talking to DSS or anything else, to be sure how his case was going. Maybe if they could set some time with him to talk when mama wasn't there. Cause I know there were several times
 
 *63
 
 when he didn't talk or said during the visits. I think mother testified that there were at least 3 visits that did not take and I'm just talking about it during the incarceration but since cease efforts;
 

 ....
 

 101. [L.L.O.] has not had an opportunity to really bond with her father based on the testimony I heard. That she had an opportunity to begin bonding with the mother when she was born prematurely. I believe mama was there 24/7. I don't doubt that. Ma'am it's just your actions when the child needed treatment and then not getting a decent place for the child to live in it appeared that you didn't care[.]
 

 *453
 
 With respect to Respondent-mother, the GAL argues that in addition to the findings numbered 64, 65 and 82,
 
 supra
 
 , addressing both parents, the following findings of fact support the court's conclusion of neglect by Respondent-mother.
 

 47. That during the pendency of the neglect proceeding, the Respondent mother failed to gain any employment or engage in any gainful activity to enable her to provide financial assistance to the child; the Court further finds she has not worked in fifteen months;
 

 ....
 

 49. During the course of the neglect proceeding, the Respondent mother has not provided any financial support for her minor child, [L.L.O.];
 

 ....
 

 54. The mother was requested to attend drug screens on seven occasions;
 

 55. On three occasions, she failed to attend the requested drug screens;
 

 56. On one of her drug screens she tested positive for controlled substances through hair testings, on two occasions she did not provide a sufficient quantity of hair for testing, on three occasions she had positive screens through urine testing, and she had one negative drug screen through urine testing;
 

 ....
 

 96. I can't swear in this one because I don't know for sure. But in almost every case in every case I can recall. Anytime I've ceased efforts I was sure to say to the parents that cease efforts just moves the ball from DSS Court to your Court. You can keep working, you can keep doing stuff to swing it back to you getting the child back, and mama hasn't done anything. I mean she's done some stuff but she hadn't done anything to amount to anything as far as I'm concerned according to her elements of testimony about getting the child into a public element (you can use that language). You hadn't done anything except you filed an application and paid money that she could have paid 8 or 9 years ago, at least it could have been paid while
 
 *454
 
 Respondent Father was working. I mean it could have been paid. No question in my mind it could've been paid and it was not[.]
 

 None of these purported findings of fact address or mention the probability of repetition of neglect or failure to provide necessary medical or remedial treatment to L.L.O. In fact, a contradiction is that L.L.O.'s young siblings and a newborn sibling remain in the care and custody of Respondents.
 

 The GAL argues the omission of an ultimate finding of a probability of future neglect was inadvertence and constitutes harmless error. We reject this argument.
 
 See
 

 In re D.R.B.
 
 ,
 
 182 N.C.App. 733
 
 , 738,
 
 643 S.E.2d 77
 
 , 80 (2007) (holding that where the "trial court's findings do not establish grounds for termination[,] [i]ts failure to articulate those grounds is not harmless");
 
 see also
 

 In re E.L.E.
 
 , --- N.C.App. at ----,
 
 778 S.E.2d at 450-51
 
 ("absence of this necessary finding [of a probability of a repetition of neglect] requires reversal").
 

 The present termination order contains no finding of a probability of a repetition of the neglect, which led to L.L.O.'s removal from Respondents' care.
 
 See
 

 In re D.R.B.
 
 ,
 
 182 N.C.App. at 738
 
 ,
 
 643 S.E.2d at
 
 80 ;
 
 In re E.L.E.
 
 , --- N.C.App. at ----,
 
 778 S.E.2d at 450-51
 
 . Here, the record contains evidence, which could support, although not compel, a finding of neglect. "Without further fact-finding, we cannot determine whether the court's conclusions are supported by its findings."
 

 *64
 

 In re D.M.O.
 
 , --- N.C.App. ----, ----,
 
 794 S.E.2d 858
 
 , 866 (2016). We vacate that portion of the order and remand.
 

 B. N.C. Gen. Stat. § 7B-1111(a)(2)
 

 N.C. Gen. Stat. § 7B-1111(a)(2) (2015) provides the court may terminate parental rights upon a finding that Respondents have "willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile."
 

 At the outset, we note DSS' motion to terminate Respondents' parental rights failed to cite N.C. Gen. Stat. § 7B-1111 as the particular statutory basis upon which it was seeking to terminate Respondents' parental rights. Further, DSS' motion did not contain any of the terms or any combination thereof which are contained in N.C. Gen. Stat. § 7B-1111(a)(2). "While there is no requirement that the factual allegations be exhaustive or extensive, they must put a party on notice as to what acts, omissions
 
 *455
 
 or conditions are at issue."
 
 In re Hardesty
 
 ,
 
 150 N.C.App. 380
 
 , 384,
 
 563 S.E.2d 79
 
 , 82 (2002). Without the terms, "willfully left," "reasonable progress," "conditions which led to the removal," Respondents would seem to be at a disadvantage to prepare for the TPR hearing. However, as neither Respondent raises the issue, we address whether the facts support the conclusion of lack of reasonable progress as a ground for termination.
 
 See
 

 In re S.Z.H.
 
 , --- N.C.App. ----, ----,
 
 785 S.E.2d 341
 
 , 347 (2016).
 

 Respondents assert the district court erred when it concluded they had not made reasonable progress towards correcting the conditions that led to the removal of L.L.O. from their care. Respondents contend the trial court's findings of fact do not support its conclusion of law that grounds exist to terminate pursuant to N.C. Gen. Stat. § 7B-1111(a)(2).
 

 To terminate parental rights under N.C. Gen. Stat. § 7B-1111(a)(2), the trial court must perform a two-part analysis.
 
 In re O.C.
 
 ,
 
 171 N.C.App. 457
 
 , 464,
 
 615 S.E.2d 391
 
 , 396,
 
 disc. review denied
 
 ,
 
 360 N.C. 64
 
 ,
 
 623 S.E.2d 587
 
 (2005).
 

 The trial court must determine by clear, cogent and convincing evidence that a child has been willfully left by the parent in foster care or placement outside the home for over twelve months, and, further, that as of the time of the hearing, as demonstrated by clear, cogent and convincing evidence, the parent has not made reasonable progress under the circumstances to correct the conditions which led to the removal of the child.
 

 Id.
 
 at 464-65,
 
 615 S.E.2d at 396
 
 .
 

 "A finding of willfulness does not require a showing of fault by the parent."
 
 In re Oghenekevebe
 
 ,
 
 123 N.C.App. 434
 
 , 439,
 
 473 S.E.2d 393
 
 , 398 (1996). "Willfulness is established when the respondent had the ability to show reasonable progress, but was unwilling to make the effort."
 
 In re McMillon
 
 ,
 
 143 N.C.App. 402
 
 , 410,
 
 546 S.E.2d 169
 
 , 175,
 
 disc. review denied
 
 ,
 
 354 N.C. 218
 
 ,
 
 554 S.E.2d 341
 
 (2001).
 

 In this case, the trial court's findings of fact numbered 47, 54, 55, 56, 57, 58, 59 and 65, relied upon by the GAL to support a conclusion of neglect, also address Respondents' failure to achieve the goals they set with DSS in their case plans. In addition, the court found:
 

 60. That in order to maintain contact with their infant child, the presiding Judge initially granted the parents unsupervised visitation on three days each week;
 

 *456
 
 ....
 

 67. That during the pendency of this action, the father engaged in criminal activity by selling cocaine to an undercover agent of the Person County Sheriff's Department in 2013;
 

 68. After being convicted of selling drugs, and during the pendency of this proceeding, [Respondent-father] was also charged in 2014 with larceny ...;
 

 69. Based on his criminal activity, the father was required to spend a significant amount of time in Person County Jail ...;
 

 ....
 

 *65
 
 74. At some point in time during the initial neglect proceeding, the parents lost their lease for failure to pay rent;
 

 ....
 

 76. [Respondent-father's] sister allowed [Respondents] and two of their minor children to move into her home, even though she had herself, her husband and her minor children residing in such home at that time;
 

 ....
 

 79. That since the initiation of the Termination of Parental Rights proceeding, the mother has moved from the home of [Respondent-father's] sister, and moved to an apartment rented by her sister ... in Roxboro;
 

 80. That this is a three room apartment, currently housing the sister and her two children, with [Respondent-mother] and her two children using one bedroom;
 

 ....
 

 82. That these accommodations are not sufficient to additionally house [L.L.O.];
 

 83. That save and except for limited visitation, Respondent[s] ha[ve] provided no personal care for [L.L.O.] since the filing of this Motion for Termination of Parental Rights;
 

 ....
 

 *457
 
 92. ... Respondent Mother owed a public housing bill of $259 since sometime around 2006, which went unpaid until recently. Looking at all the conditions the parents lived under, the parents had income for two (2) years, but failure to pay the $259 kept them out of public housing, which would have been free. Spending your money on whatever you spend it on, and not paying a debt in the amount of $259 which will get a roof your head is neglect to the Court. I want it to be very clear that she went from 2006 until very recently and didn't pay the $259.
 

 ....
 

 94. That the child has been willfully left by the Respondent parents in foster care or placement outside the home for over 12 months and at the time of the hearing also demonstrated by clear and convincing evidence that the parents have not made reasonable progress under the circumstances to correct the conditions which led to the removal of the child. There is no question about leaving the child in foster care now and I was disappointed in this;
 

 ....
 

 114. ... [T]he only progress made towards the reunification goals by the parents has been related to visits with [L.L.O.];
 

 However, the court also made findings of fact contradicting those stated above:
 

 27. The mother.... is currently completing an application for public housing;
 

 ...
 

 29. The father has completed his GED and other courses involving Life Skills, Financial Skills, and Critical Thinking; and attended NA and AA meetings while incarcerated;
 

 ....
 

 31. That the Respondent father broke his foot in April, 2013 and was unable to work;
 

 ....
 

 *458
 
 36. That Respondent mother now has a valid driver's license and access to a motor vehicle for use at all times;
 

 37. That Respondent mother has attended all hearings in this matter, and on various occasions has walked from her residence, sometimes over two (2) miles to attend such hearing;
 

 38. That Respondent mother successfully completed a required course of Substance Abuse Comprehensive Outpatient Treatment by Freedom House Recovery Center on September 27, 2013;
 

 39. That the Respondents' annual family income during 2012, 2013, and 2014 and to date in 2015 has been less than $20,000 in each year;
 

 40. That the Court takes Judicial Notice that the Respondents family income in 2012, 2013, 2014 and 2015 was below the Federal Poverty Level;
 

 In the case of
 
 In re E.L.E.
 
 , the evidence presented at the TPR hearing failed to suggest the respondent remained involved in any domestic violence. --- N.C.App. at ----,
 
 778 S.E.2d at 450
 
 . In its order terminating the
 
 *66
 
 respondent's parental rights, the trial court made no findings of fact regarding the respondent's progress toward correcting the domestic violence issues. Further the court "commended respondent on her progress in addressing her substance abuse issues."
 

 Id.
 

 This Court concluded such findings cannot support a conclusion that the respondent "had not made reasonable progress under the circumstances toward
 
 correcting the conditions which led to [the child's] removal from her care.
 
 "
 

 Id.
 

 (emphasis supplied).
 

 This Court requires orders to contain findings of fact which are clear and enable this Court to adequately determine if the findings support the trial court's conclusions of law.
 
 In re A.B.
 
 ,
 
 239 N.C.App. 157
 
 , 172,
 
 768 S.E.2d 573
 
 , 581-82 (2015). Here, many of the trial court's findings could best be described as "stream of consciousness." "While stream of consciousness is a well-recognized literary style, it is not well suited to court orders."
 
 Peltzer v. Peltzer
 
 ,
 
 222 N.C.App. 784
 
 , 789,
 
 732 S.E.2d 357
 
 , 361 (2012).
 

 Inconsistent and "stream of consciousness" findings and conclusions in an order impedes this Court's ability to determine whether the trial court reconciled and adjudicated all of the evidence presented to it.
 

 *459
 
 "Without adjudicated findings of fact this Court cannot conduct a meaningful review of the conclusions of law and 'test the correctness of [the trial court's] judgment.' "
 
 In re M.K.
 
 ,
 
 241 N.C.App. 467
 
 , 470,
 
 773 S.E.2d 535
 
 , 538 (2015) (quoting
 
 Appalachian Poster Adver. Co.
 
 ,
 
 89 N.C.App. at 480
 
 ,
 
 366 S.E.2d at
 
 707 ).
 

 In the case of
 
 In re D.M.O.
 
 , --- N.C.App. ----,
 
 794 S.E.2d 858
 
 (2016), the respondent-mother's parental rights to her son had been terminated for abandonment. To terminate on grounds of abandonment the trial court must find the respondent "willfully" abandoned her child.
 

 Id.
 

 at ----,
 
 794 S.E.2d at 861
 
 . The trial court in
 
 D.M.O.
 
 found "respondent-mother had a history of substance abuse" and was incarcerated for periods during the determinative six months.
 

 Id.
 

 at ----,
 
 794 S.E.2d at 864
 
 . The court also found that, during those same months, "respondent-mother failed to exercise visitation and to attend [her son's] sports games, and failed to contact [him] during three of those months."
 

 Id.
 

 However, the trial court "made no findings establishing whether respondent-mother had made any effort, had the capacity, or had the ability to acquire the capacity, to perform the conduct underlying its conclusion that respondent-mother abandoned [her son] willfully."
 

 Id.
 

 This Court held the trial court's findings were inadequate to support a conclusion of abandonment. Because conflicting evidence was presented at the TPR hearing, and this Court could not determine whether the court's conclusions supported its findings, this Court vacated the TPR order and remanded to the trial court for further findings and conclusions relating to the issue of willfulness.
 

 Id.
 

 at ----,
 
 794 S.E.2d at 865-66
 
 .
 

 Here, the trial court found:
 

 94. That the child has been willfully left by the Respondent parents in foster care or placement outside the home for over 12 months and at the time of the hearing, also demonstrated by clear and convincing evidence that the parents have not made reasonable progress under the circumstances to correct the conditions which led to the removal of the child. There is no question about leaving the child in foster care now and I was disappointed in this[.]
 

 The court's finding numbered 94 was followed by the "stream of consciousness" and impossible to follow findings numbered 95 and 96,
 
 supra.
 

 *460
 
 The order does not contain the necessary findings of fact to support the conclusion that Respondents willfully left L.L.O. in foster care without making reasonable progress under the circumstances to correct the conditions which led to the removal of their child.
 

 According to Respondent-mother's trial testimony, they sought transportation assistance from DSS, but were denied help. They believed DSS was to transport them to the missed appointment, which triggered the removal of L.L.O., and when they failed to visit L.L.O. it was due to lack of transportation. Both Respondents testified they had been regularly applying for work.
 

 *67
 
 While the trial court exercises discretion to credit or disbelieve Respondents' evidence, the court's current findings are inadequate to resolve the conflicting evidence. The order does not contain the required findings to support the conclusion that Respondents willfully failed to make reasonable progress towards correcting the conditions which led to the removal of their child.
 
 See id.
 

 The court's conclusions that Respondents had failed to make reasonable progress under the circumstances in correcting those conditions which led to the removal of the juvenile are not supported by its findings of fact. We vacate and remand that portion of the court's order. On remand, the court may take additional evidence if necessary.
 
 In re D.R.B.
 
 ,
 
 182 N.C.App. at 739
 
 ,
 
 643 S.E.2d at 81
 
 .
 

 We also note the trial court violated N.C. Gen. Stat. § 7B-1109(e) and N.C. Gen Stat. § 7B-1110(a) where its TPR order was not entered until approximately nine months after the completion of the adjudicatory and disposition hearing. N.C. Gen. Stat. § 7B-1109(e) (2015) ("The adjudicatory order shall be reduced to writing, signed, and entered no later than 30 days following the completion of the termination of parental rights hearing" or "10 days of the subsequent hearing [to explain the reason for delay] required by this subsection."); N.C. Gen. Stat. § 7B-1110(a) (2015) ("Any order shall be reduced to writing, signed, and entered no later than 30 days following the completion of the termination of parental rights hearing.... [or] within 10 days of the subsequent hearing [to explain reason for delay] required by this subsection.").
 

 Since we vacate the court's order, we do not need to address Respondents' remaining arguments, asserting any shortcomings with respect to their completion of their case plans were due more to poverty than a willful failure to address the issues.
 
 See
 
 N.C. Gen. Stat. § 7B-1111(a)(2) ("[N]o parental rights shall be terminated for the sole
 
 *461
 
 reason that the parents are unable to care for the juvenile on account of their poverty.").
 

 VI. Conclusion
 

 The trial court failed to enter adequate findings of fact to demonstrate and conclude that grounds existed pursuant to N.C. Gen. Stat. § 7B-1111(a)(1) and (2) to terminate Respondents' parental rights. We vacate the court's order and remand.
 
 It is so ordered.
 

 VACATED AND REMANDED.
 

 Judges BRYANT and DAVIS concur.