IN THE SUPREME COURT OF NORTH CAROLINA

2022-NCSC-96

No. 325A21

Filed 19 August 2022

IN THE MATTER OF: M.B., J.B., and J.S.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) (2019) from orders entered on 1 June 2021 by Judge Marion M. Boone in District Court, Surry County. This matter was calendared for argument in the Supreme Court on 1 July 2022 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*R. Blake Cheek for petitioner-appellee Surry County Department of Social Services.*

*James N. Freeman Jr. for appellee Guardian ad Litem.*

*David A. Perez for respondent-appellant mother.*

HUDSON, Justice.

¶ 1      Respondent appeals from the trial court's orders terminating her parental rights in Mary[1] (born April 2010), James (born August 2011), and Joy (born September 2016) based on neglect and failure to show reasonable progress in correcting the conditions which led to the removal of the children from the home. Because the trial court failed to make necessary determinations to support the

---

[1] Pseudonyms are used throughout the opinion to protect the identities of the children and for ease of reading.

adjudication of grounds for termination under N.C.G.S. § 7B-1111(a)(1) and (2), we vacate the trial court's orders and remand for further proceedings not inconsistent with this opinion. *See* N.C.G.S. § 7B-1111(a)(1)–(2) (2021).

## I.   Factual and Procedural Background

On 22 March 2019, the Surry County Department of Social Services (DSS) filed juvenile petitions alleging that Mary, James,[2] and Joy[3] were neglected juveniles. The petitions alleged that the children lived in an injurious environment due to respondent's substance abuse, improper supervision, and unsanitary home conditions. DSS explained that it had been providing case management services to the family since January 2019, but that respondent failed to participate in any referred services, including Intensive Family Preservation Services and assessments for mental health and substance abuse. The petitions alleged that a DSS social worker visited respondent's home twice on 22 March 2019 to develop a safety plan for the children, but respondent refused to meet with the social worker. The social worker observed that there were "numerous bags of trash piled up on the back porch" and the home had a mouse infestation. The petition also alleged that Mary and Joy both had untreated boils on their bodies and that Mary had "blistery areas on her face." After the filing of the juvenile petitions, DSS obtained nonsecure custody of the

---

[2] Mary and James share the same father, who is deceased.
[3] Joy's father is not a party to this appeal.

children. The children were placed in foster care, and the trial court awarded respondent two hours of supervised visitation once per week.

¶ 3        On 17 April 2019, respondent entered into a case plan with DSS to address the issues that led to the children's removal from her home. The case plan required respondent to: obtain a substance abuse assessment and comply with recommended treatment including random drug screens, complete parenting classes, obtain and maintain suitable housing, and obtain and maintain gainful employment.

¶ 4        On 11 June 2019, the trial court adjudicated Mary, James, and Joy neglected juveniles and continued custody with DSS. Respondent stipulated to the factual allegations in the petition that supported the trial court's adjudication. The trial court ordered respondent to comply with the components of her case plan and set the primary permanent plan as reunification with a secondary plan of termination of parental rights and adoption.

¶ 5        Following a 31 October 2019 review hearing, the trial court entered an order on 16 December 2019 reducing respondent's visitation to two hours every other week due to her poor attendance. The court found that respondent had attended only seven of the thirteen scheduled visits. The court also found that respondent completed a comprehensive clinical assessment on 16 July 2019 and was referred to substance abuse intensive outpatient treatment. Finally, the court found that respondent was provided the opportunity to complete substance abuse treatment and parenting

programs but had inconsistent attendance.

¶ 6　　　　In an order entered on 27 October 2020, the trial court changed the children's primary permanent plan to termination of parental rights and adoption due to respondent's ongoing mental health and substance abuse issues. The court found respondent was diagnosed with opiate use disorder severe, amphetamine use disorder severe, post traumatic stress disorder, and unspecified depressive disorder. Respondent was not compliant with her substance abuse treatments and continued to struggle with her sobriety, testing positive for amphetamines and methamphetamines on 10 June 2020. The court found that respondent was not making reasonable progress on her case plan and that there remained significant barriers to reunification.

¶ 7　　　　On 23 December 2020, DSS filed a motion to terminate respondent's parental rights in Mary, James, and Joy, alleging that grounds existed for termination based on neglect and willfully leaving the minor children in foster care without showing reasonable progress in correcting the conditions which led to the removal of the children from the home. *See* N.C.G.S. § 7B-1111(a)(1)–(2).

¶ 8　　　　On 7 April 2021, the trial court held a hearing on the motion to terminate respondent's parental rights. In a 1 June 2021 adjudication order, the trial court found that respondent had not completed substance abuse treatment as required by her case plan, had tested positive for illicit substances on six drug screens, had not

maintained safe and stable housing, and was not employed. The trial court further found that respondent was not making reasonable progress under the circumstances in correcting the conditions that led to the removal of the children and, therefore, grounds existed to terminate respondent's parental rights under N.C.G.S. § 7B-1111(a)(1) and (2). In a separate disposition order entered the same day, the court concluded that it was in the children's best interests that respondent's parental rights be terminated and terminated respondent's parental rights. Respondent timely appealed.

¶ 9         On appeal, respondent argues that the trial court failed to make certain necessary determinations regarding both grounds for termination. First, respondent contends that the trial court failed to make the necessary determination that there was a probability of repetition of neglect under N.C.G.S. § 7B-1111(a)(1). Second, respondent contends that the trial court failed to make the necessary determination that her failure to make reasonable progress was willful under N.C.G.S. § 7B-1111(a)(2).[4]

## II.    Analysis

¶ 10       "Our Juvenile Code provides for a two-step process for termination of parental rights proceedings consisting of an adjudicatory stage and a dispositional stage." *In*

---

[4] Respondent does not challenge the trial court's determination that termination of her parental rights was in the best interests of the children.

*re Z.A.M.*, 374 N.C. 88, 94, (2020) (citing N.C.G.S. §§ 7B-1109, 1110 (2019)). At the adjudicatory stage, the petitioner bears the burden of proving by "clear, cogent, and convincing evidence" the existence of one or more grounds for termination under N.C.G.S. § 7B-1111(a). N.C.G.S. § 7B-1109(e)–(f) (2021). We review an adjudication order "to determine whether the findings are supported by clear, cogent and convincing evidence and the findings support the conclusions of law." *In re E.H.P.*, 372 N.C. 388, 392 (2019) (quoting *In re Montgomery*, 311 N.C. 101, 111 (1984)). "Findings of fact not challenged by respondent are deemed supported by competent evidence and are binding on appeal." *In re T.N.H.*, 372 N.C. 403, 407 (2019). "The trial court's conclusions of law are reviewable de novo on appeal." *In re C.B.C.*, 373 N.C. 16, 19 (2019).

**A. Adjudication Under N.C.G.S. § 7B-1111(a)(1)**

First, respondent argues that the trial court erred in concluding that grounds existed to terminate her parental rights based on neglect because it failed to determine the likelihood of a repetition of neglect. We agree, and therefore vacate this portion of the trial court's orders.

Pursuant to N.C.G.S. § 7B-1111(a)(1), a trial court may terminate parental rights upon a finding that the parent has neglected the juvenile. Generally, "[t]ermination of parental rights based upon this statutory ground requires a showing of neglect at the time of the termination hearing." *In re L.H.*, 378 N.C. 625, 2021-

NCSC-110, ¶ 10 (quoting *In re R.L.D.*, 375 N.C. 838, 841 (2020)). However, in instances where "the child has been separated from the parent for a long period of time, there must be a showing of a likelihood of *future* neglect by the parent." *Id.* (emphasis added) (quoting *In re R.L.D.*, 375 N.C. at 841). "In such cases, a trial court may terminate parental rights based upon prior neglect of the juvenile if the trial court *finds by clear and convincing evidence a probability of repetition of neglect* if the juvenile were returned to [his or] her parents." *In re E.L.E.*, 243 N.C. App. 301, 308 (2015) (cleaned up) (emphasis added).

¶ 13        Because it lacks a crystal ball, a trial court may consider many past and present factors to make this forward-looking determination. *See In re L.H.*, ¶ 17 ("[W]hile any determination of a likelihood of future neglect is inevitably predictive in nature, the trial court's findings were not based on pure speculation."). For instance, a trial court "must consider evidence of changed circumstances occurring between the period of past neglect and the time of the termination hearing." *In re Z.V.A.*, 373 N.C. 207, 212 (2019). Likewise, a trial court may consider "whether the parent has made any meaningful progress in eliminating the conditions that led to the removal of the children." *In re O.W.D.A.*, 375 N.C. 645, 654 (2020) (quoting *In re J.H.K.*, 215 N.C. App. 364, 369 (2011)). When these factors evidence "a likelihood of repetition of neglect, the trial court may reach a conclusion of neglect under [N.C.G.S.] § 7B-1111(a)(1)." *In re J.H.K.*, 215 N.C. App. at 368.

¶ 14        However, these are only *factors* within the trial court's ultimate determination of a likelihood of future neglect; noting the factors alone does not amount to making the determination itself. After noting these factors, the trial court must then distinctly determine a parent's likelihood of neglecting a child in the future. *See, e.g., In re L.H.*, ¶ 11 (affirming a trial court's termination of parental rights under N.C.G.S. § 7B-1111(a)(1) because the trial court "ultimately determined there was a substantial likelihood that the children would again be neglected if returned to respondent's care *based on* [various factual] findings" (emphasis added)); *In re Reyes*, 136 N.C. App. 812, 815 (2000) ("[P]arental rights may . . . be terminated if there is a showing of a past adjudication of neglect *and* the trial court finds by clear and convincing evidence a probability of repetition of neglect if the juvenile were returned to [his or] her parents." (emphasis added)). When the trial court fails to distinctly determine that there is a likelihood of future neglect, "the ground of neglect is unsupported by necessary findings of fact." *In re E.L.E.*, 243 N.C. App. at 308. Even when "competent evidence in the record exists to support such a finding, . . . the absence of this necessary finding [still] requires reversal." *Id.*

¶ 15        Here, the trial court found the component factors but did not make the ultimate determination. While the trial court made extensive unchallenged findings in the adjudication order regarding respondent's lack of progress on her case plan, the trial court's order is devoid of any distinct determination of whether there was a likelihood

of future neglect should the children be returned to respondent's care. Because the children had been outside of respondent's care for an extended period of time, such a determination "was necessary to sustain the conclusion that respondent's parental rights were subject to termination based on neglect." *In re B.R.L.*, 379 N.C. 15, 2021-NCSC-119, ¶ 23.

To be sure, the trial court's findings of fact regarding respondent's lack of progress *could have* been sufficient to support a determination of a likelihood of future neglect. *See, e.g., In re O.W.D.A.*, 375 N.C. at 654. For instance, the trial court's unchallenged findings of fact demonstrated that respondent "ha[d] not obtained or maintained safe, suitable, and stable housing" and "ha[d] no visible means to support herself." But as written, the trial court's order fails to make the necessary and distinct determination of a likelihood of future neglect. This failure constitutes reversible error. Accordingly, we vacate this portion of the trial court's orders and remand the matter to the trial court for consideration of whether there was a likelihood of repetition of neglect.

Because we conclude that termination of respondent's parental rights cannot be upheld under N.C.G.S. § 7B-1111(a)(1), we next turn to the trial court's conclusion that grounds existed for termination under N.C.G.S. § 7B-1111(a)(2).

**B. Adjudication Under N.C.G.S. § 7B-1111(a)(2)**

Second, respondent argues that the trial court erred in concluding that grounds

existed under N.C.G.S. § 7B-1111(a)(2) to terminate her parental rights because it failed to make any determination that her lack of progress was willful. We agree, and therefore vacate this portion of the trial court's orders as well.

¶ 19        Subsection 7B-1111(a)(2) provides that parental rights may be terminated if "[t]he parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile." N.C.G.S. § 7B-1111(a)(2).

> Termination under this ground requires the trial court to perform a two-step analysis where it must determine by clear, cogent, and convincing evidence whether (1) a child has been willfully left by the parent in foster care or placement outside the home for over twelve months, and (2) the parent has not made reasonable progress under the circumstances to correct the conditions which led to the removal of the child.

*In re Z.A.M.*, 374 N.C. at 95. "The willfulness of a parent's failure to make reasonable progress toward correcting the conditions that led to a child's removal from the family home is established when the parent had the ability to show reasonable progress, but was unwilling to make the effort." *In re A.S.D.*, 378 N.C. 425, 2021-NCSC-94, ¶ 10 (cleaned up).

¶ 20        This Court has previously determined that a trial court must make a finding of a parent's willfulness in relation to termination of parental rights pursuant to N.C.G.S. § 7B-1111(a)(7) for willful abandonment. *See In re K.N.K.,* 374 N.C. 50, 53

(2020) ("The willfulness of a parent's actions is a question of fact for the trial court"); *In re N.D.A.*, 373 N.C. 71, 81 (2019) (concluding that a trial court's "fail[ure] to adequately address the . . . willfulness of [respondent's] conduct" rendered the findings insufficient to support termination based on willful abandonment); *cf. In re N.M.H.*, 375 N.C. 637, 643–44 (2020) (affirming an adjudication of willful abandonment as a ground for termination despite the trial court's failure to use the statutory language because the findings "ultimately support[ed] the conclusion that respondent's conduct met the statutory criterion of willful abandonment[,]" and "when read in context, the trial court's order makes clear that the court applied the proper willfulness standard to determine that respondent willfully abandoned the child under N.C.G.S. § 7B-1111(a)(7)"). Likewise, the Court of Appeals has reversed a trial court's termination of parental rights on the ground of willful failure to make reasonable progress because the trial court's order did "not contain adequate findings of fact that respondent acted 'willfully[,]' " *In re C.C.*, 173 N.C. App. 375, 384 (2005), when the order was "devoid of any finding that respondent was 'unwilling to make the effort' to make reasonable progress in remedying the situation that led to the adjudication of neglect[,]" *id.* at 383.

¶ 21      Based on these precedents, we are persuaded that the trial court was required to make a finding of willfulness to support its termination of respondent's parental rights under N.C.G.S. § 7B-1111(a)(2) in this case.

¶ 22    As above, the trial court's orders here falls short of this requirement: they lack any determination that respondent's conduct was willful. Although the trial court made extensive findings regarding respondent's lack of progress on her case plan, it neither found nor concluded that respondent *willfully* left the children in foster care without making reasonable progress or that respondent's lack of progress met the statutory criteria under N.C.G.S. § 7B-1111(a)(2). Accordingly, we hold that the trial court's findings are insufficient to support its conclusion that grounds existed to terminate respondent's parental rights pursuant to N.C.G.S. § 7B-1111(a)(2) and vacate this portion of the trial court's orders. However, we note that evidence was presented during the adjudicatory stage from which the trial court could have made additional findings of fact addressing the willfulness of respondent's failure to make progress on her case plan. We therefore remand the matter back to the trial court for further factual findings on this ground.

## III.    Conclusion

¶ 23    Because the trial court failed to make necessary determinations on adjudication under N.C.G.S. § 7B-1111(a)(1) and (2), we vacate the court's orders terminating respondent's parental rights and remand the matter for further proceedings not inconsistent with this opinion, including the entry of a new order determining whether respondent's parental rights were subject to termination based on neglect and willful failure to make reasonable progress. *See In re C.L.H.*, 376 N.C.

614, 2021-NCSC-1, ¶ 17 (vacating and remanding for further proceedings "[w]here . . . the trial court's adjudicatory findings were insufficient to support its conclusion that termination of the parent's rights was warranted, but the record contained additional evidence that could have potentially supported a conclusion that termination was appropriate" (cleaned up)). The trial court may, in the exercise of its discretion, receive additional evidence on remand if it elects to do so. *See In re N.D.A.*, 373 N.C. at 84.

VACATED AND REMANDED.

Justice BERGER dissenting.

The majority's elevation of form over substance only serves to delay final resolution of this matter. Because the trial court entered a detailed order sufficient to terminate respondent's parental rights under N.C.G.S. § 7B-1111(a)(1) and (2), I respectfully dissent.

Here, the trial court's unchallenged findings of fact demonstrate respondent's inability to provide "safe, suitable, and stable housing" for the children at the time of the termination hearing. Additionally, the trial court found that respondent had reported "no stable employment" and "has no visible means of support" to provide for her children going forward. The trial court indicated that at the time of the hearing, respondent "ha[d] failed to achieve stability for herself and her children."

Moreover, the trial court made extensive unchallenged findings in the adjudication order regarding respondent's lack of progress on her case plan. The juveniles had been in the custody of DSS for two years, and the trial court outlined respondent's failure to complete the substance abuse treatment and parenting programs, pointing to her excessive absences, "lack of engagement," and continued "narcotic usage." Notably, the trial court found respondent "still has *ongoing* substance abuse problems and she has not completed any in-patient treatment." (Emphasis added.) Accordingly, the trial court found that respondent had not demonstrated progress in resolving the issues her case plan attempted to address.

These findings demonstrate that respondent lacked the ability to provide proper care to Mary, James, and Joy at the time of the termination hearing and are indicative of a likelihood of future neglect if the children were returned to respondent's care. *See In re M.A.*, 374 N.C. 865, 870, 844 S.E.2d 916, 920–21 (2020); *see also Matter of L.E.W.*, 375 N.C. 124, 136, 846 S.E.2d 460, 469 (2020) ("the willfulness of a parent's failure to make reasonable progress toward correcting the conditions that led to a child's removal from the family home 'is established when the [parent] had the ability to show reasonable progress, but was unwilling to make the effort.' ") Though the trial court could have provided additional findings in its order, those it did include support its conclusion to terminate respondent's parental rights.

Chief Justice NEWBY joins in this dissenting opinion.